Minshall, J.
The suit below was commenced by Sarah J. Beam and others to recover possession of certain described lands from the defendant, Charles J. Wolls, claiming to be the owner thereof, and that the defendant unlawfully deprives them of the possession. The defendant answered denying the title of the plaintiffs and pleading the statute of limitations; and, as a distinct defense, relies upon a sale of the land made in 1864, under the act of 1859, authorizing the sale or lease of estates tail in certain cases; from the purchaser at which sale, he, by intermediate conveyances, derives title to the land in question. The principal, and I may say, the only real *142 question in the case, arises upon the validity of the sale made under this statute. The cause, on the issues joined, was tried to the court, a jury being waived. The court found for the plaintffs and rendered judgment in their favor, after a motion for a new trial had been made and overruled. The defendant took a bill of exceptions containing all the evidence, which was made a part of the record. On error the circuit court reversed the judgment. The principal error relied on, and for which the circuit court reversed the judgment is, that the common pleas erred, in holding the proceedings for the sale of the entailed estate void.
The facts material to a determination of the case are not in dispute: In 1854 Jonathan Ream, the father of the plaintiff, Sarah J. Ream, and grandfather of the other plaintiffs, died testate, seized in fee of the premises in controversy. By his will he left a life estate in the land to his widow, Sarah T. Ream, and the remainder in fee to his children, the survivors and representatives of whom are these plaintiffs. In his will he named his wife executrix of his will and guardian of his children. The will was admitted to probate February 1, 1855, and Sarah T. Ream was by the probate court appointed guardian of her children and qualified as such. In April, 1864, Sarah T. Ream, the life tenant, commenced an action in the court of common pleas of Franklin county to sell the land, her life estate and the remainder of the children, ostensibly under the act of 1859, 1 S. & C., 550; and in that action the premises were sold. At the time of the commencement of the action, and at the sale, two of the children, Nancy A. Ream and Sarah J. Ream, were minors under 14 years of age, the other children *143 having died without issue, or their place of residence being unknown. The plaintiff in the action, as guardian of Nancy A. and Sarah J. Ream, entered their appearance to the action, waived process and consented to the sale. Notice of the pendency of the action was served on the minors in Butler county, Ohio. No guardian ad litem was appointed, and no answer was filed by or for them. The reason for the sale was stated to be, that it would be for the benefit of the petitioner, and do no substantial injury to the remaindermen. In August, 1864, the premises were sold, and the defendant, as before stated, claims title through the purchaser at that sale. Sarah T. Ream, the life tenant, died in September, 1890, and this suit was commenced February 5, 1891.
We are of the opinion that the judgment of the circuit court should be reversed. There was no authority for the court to make the order under which the sale was made. Ostensibly the sale was ordered in a proceeding under the act of 1859, providing for the sale or lease of estates tail in certain cases, 1 S. & C., 550. But the estate in this case was created before that act took effect, and can derive no aid whatever from it. It stands as if such statute had never been passed. Gilpin v. Williams, 25 Ohio St., 283. It was here held that the statute is not a remedial one, and to give it a retroactive effect on existing estates would impair vested estates in remainder and reversion, and hence impair the right of private property, which, under our constitution, cannot be done. We suppose that no one would assert that, prior to the enactment of the statute, a vested remainder could, at the suit of the life tenant, have been divested by the judgment of a court, simply for the purpose of making a better investment for *144 that tenant, although it would work no substantial injury to the remaindermen. Whether it would or would not be to the injury of the latter estate, is not the question. In Gilpin v. Williams, McIlvaine, J., in replying to the suggestion that it would be no injury to the owner of the future estate, that it would simply change it in kind, and when so changed would remain to the same uses, said: “The suggestion is of no avail. The proceeding seeks to divest them (the remaindermen) of their estate in the land; and it is that estate, their property in the land, which is declared to be inviolate;”, and further, that “to enforce a sale would be nothing more and nothing less than the appropriation of the estate of one person for the benefit of another.”
The statute then, having no application to the case, the court had no jurisdiction of the subject matter, and the judgment rendered in the premises was no judgment at all, and furnished no authority for the sale. The jurisdiction the court had, was a special one, conferred on it by statute, and limited by the constitution and judicial construction, to estates created after the statute took effect; hence, as the estates in this case had been created before its adoption, the court had no jurisdiction of the subject of the suit, and what was done may be collaterally attacked.
But it is argued that this sale is to be regarded as one made by the consent of the parties, because it appears that the petitioner, the life tenant, was the guardian of the minor children, and that she consented for them, and that the plaintiffs below are simply one of these children and the children of the deceased one. It might be a sufficient answer to this to say, that consent never confers jurisdiction over *145 the subject matter of a suit; so that any order or judgment made by the court in that proceeding could not be given the effect of a judicial order or judgment. It has no other or greater effect than if the parties had referred the question of a sale to the judge as an individual, and he had given it as his opinion that a sale would be proper and might be made. Still as parties may be bound by consent, where they would not otherwise be bound, it is proper to inquire what sort of consent was given in this case. The parties against whom this claim is made were minors at the time, of tender years. Their mother was their guardian and instituted the suit in her own interest for the sale. No guardians ad litem were appointed. The record simply shows that she consented for them. It is claimed that she had the power to do this under the fourth section of the act. Power is there given to testamentary guardians and those appointed by the probate court to do so. But it does not follow from this that a guardian may assent for his ward in a proceeding commenced by himself and in his own interest, and, necessarily, as in this case, occupies a position ad-adverse to his ward. It would seem, on principle, that, in such case, to warrant a guardian to consent for his ward, his interest should not be opposed to his duty, as it clearly is, where the proceding is commenced by the guardian in his own interest as tenant of the life estate. But the most effective answer that can be given to this is, that the section referred to only applies to proceedings commenced for the sale of estates created after the statute took effect; and can in no way aid such as were had for the sale of previously existing estates.
*146 As to tlie plea of the statute of limitations, it is only necessary to observe that the estate of the life tenant did not terminate until 1890, and the suit was commenced in a short while thereafter.

Judgment reversed and common pleas affirmed.